UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOSIP MEDIC,** | ) | **CASE NO. 1:06CV2107** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **THE L.D. KICHLER CO., et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the Court upon the Motion (ECF DKT #3) of Defendant, The L.D. Kichler Co. ("Kichler") to Dismiss, or in the alternative, Motion for Summary Judgment and the Motion (ECF DKT #4) of Plaintiff, Josip Medic ("Medic") to Remand. For the following reasons, Defendant's motion is denied; Plaintiff's motion is granted; and the above-captioned case is remanded to the Cuyahoga County Common Pleas Court.

**I. FACTUAL BACKGROUND**

Plaintiff Medic was employed as a High Lift Operator at a factory owned and operated by Defendant Kichler. Medic alleges Reach Truck No. 6 was "red tagged" and pulled out of service on September 28, 2005, and returned to service on September 29, 2005. On that date,

Medic was allegedly instructed by his supervisor to operate Reach Truck No. 6. While operating the truck, acting in the course of his employment, and with the exercise of due care, Medic could not stop the Reach Truck and collided with a steel pole, resulting in severe injuries. Prior to the accident, Medic was unaware of the defective brakes and was not warned by Kichler or by his supervisor of the danger. Medic brought his Complaint in Cuyahoga County Common Pleas Court, alleging Kichler committed an intentional tort by directing him to operate an unsafe piece of equipment. Kichler removed the case to U.S. District Court on the basis of federal question jurisdiction.

Plaintiff Medic insists that his claims entirely arise out of Ohio law, particularly violation of the non-negotiable statutory obligations set forth in Ohio Revised Code §§ 4101.11 and 4101.12, requiring employers to provide safe places of employment and furnish safety devices and safeguards. On the other hand, Kichler argues Medic's claims are "inextricably linked" with the Collective Bargaining Agreement ("CBA") between Local 1377 of the International Brotherhood of Electrical Workers and Kichler; and therefore, are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Further, Kichler contends the preempted claims should be dismissed because Medic failed to exhaust his administrative remedies, and failed to file his claim within the six-month statute of limitations.

## II. LAW AND ANALYSIS

A defendant may remove a civil action if the federal district court would have original jurisdiction over the action. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "well-pleaded complaint" rule requires a court to look to the "face of the

plaintiff's properly pleaded complaint" to determine whether it has original jurisdiction over a case. *Id.* However, an exception to the "well-pleaded complaint" rule is the "complete preemption" doctrine. *Id.* at 399. "[A]ny claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393. Because Kichler is the party seeking removal, and since the face of Medic's well-pleaded Complaint does not state a federal claim, Kichler carries the burden of establishing Medic's cause of action is completely preempted. *See Valinski v. Detroit Edison*, 197 Fed. Appx. 403, 2006 WL 2220979 at *12 (6th Cir., Aug. 4, 2006).

The United States Supreme Court limits complete preemption to very few statutes; yet, among them is § 301 of the LMRA. Section 301 preempts state law when plaintiff's claim "substantially implicate[s] the meaning of collective bargaining agreement terms." *DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994). To determine whether a claim is completely preempted by § 301, the Court applies a two-step analysis:

> 1. Whether proof of the state law claim requires interpretation of collective bargaining terms; and
> 2. Whether state law or the CBA created the plaintiff's right to bring suit.

*DeCoe, id.*; *Medlen v. Estate of Meyers*, 2005 WL 3307313 (N.D. Ohio, Dec. 6, 2005), No. 3:05CV7201; *Stapelton v. Alcoa, Inc.*, 2006 U.S. Dist. LEXIS 16506 at *4-5, Slip Copy, No. 1:05CV2661 (N.D. Ohio, Apr. 5, 2006).

A claim of employer intentional tort is undeniably a creature of Ohio law; however, the application of preemption under § 301 has been expanded to include state-law tort claims. *Allis-Chalmers v. Lueck*, 471 U.S. 202 (1985); *Valinski*, *supra* at *17. Caution must be exercised, nonetheless, since "merely consulting a CBA in the course of adjudicating state law claims is not enough" for preemption to apply. *Livadas v. Bradshaw*, 512 U.S. 107, 124

(1994). The Supreme Court notes that the preemptive effect of federal labor contract law must be determined on a case-by-case basis, because "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Allis-Chalmers*, 471 U.S. at 211, 220.

The Court finds that consideration of Plaintiff Medic's intentional tort claim does not necessitate an interpretation of the terms of the CBA between Kichler and Local 1377. To prove an intentional tort claim against an employer, a plaintiff-employee must show: 1.) the employer had knowledge of a danger within the business; 2.) the employer knew that if an employee were exposed to that danger, injury was certain or substantially certain to occur; and 3.) the employer, despite this knowledge, required the employee to perform the dangerous task. *Fyffe v. Jeno's, Inc*., 59 Ohio St. 3d 115, 118 (1991).

Article 1, Paragraph 1.2 of the CBA provides: "It shall be the exclusive responsibility of the Company to insure the safety and health of its employees and compliance by them with any safety rules contained herein or established by the Company . . ." A pertinent safety rule promulgated by Kichler requires the reporting of faulty equipment:

> If, at any time an electrical industrial truck is found to be in need of repair, or in any way is unsafe, the matter shall be reported immediately to the designated authority and no one shall again operate the truck until it has been made safe. Specific consideration shall be given to the proper functioning of wheels, horns, lights, battery, controller, lift system (including forks, chains, cable and limit switches), ***brakes*** and steering mechanism. (Emphasis added).

Further, the safety rule provides that if an employee detects a problem, the employee should complete a repair and safety check form and submit it to the appropriate supervisor. The CBA imposes the obligation on Kichler of providing a safe work environment, and empowers Kichler with the sole authority to direct the working forces and plan, direct and control

company operations.  (Article 18, Paragraph 18.1).  The CBA also prescribes a grievance procedure, culminating in binding arbitration.

Despite these relevant CBA provisions, this Court finds their interpretation is not necessary to consideration of Plaintiff Medic's intentional tort claim.  Under Ohio state law, an intentional tort action revolves around questions of fact.  Medic alleges he had no knowledge the brakes on Reach Truck No. 6 were faulty; thus, he was not in a position to refuse to operate the vehicle, nor could he have submitted a repair form to his supervisor.  Furthermore, to prevail, Medic must satisfy his burden of proof by submitting evidence of his employer's knowledge of the hazard and intent to require the hazardous job be performed anyway.  Such evidence is not found within the "four corners" of the CBA.  General discussion in the CBA of safety obligations and authority to direct employees is insufficient to mandate preemption.  Ohio employees have the right to be free from intentional injury on the job, regardless of the language in the agreement between their union and their employer.  *See O'Shea v. The Detroit News*, 887 F. 2d 683, 687 (6th Cir. 1989) (state law age discrimination claim not preempted because "Michigan employees have the right not to be discriminated against . . . without regard to the [CBA]'s language about employee's rights").

Both Kichler and Medic discuss this Court's decision in *Stapelton, supra*, which held § 301 of the LMRA preempted an intentional tort claim.  That decision does not inevitably suggest an identical ruling be made here.  First, the *Stapelton* fact pattern is clearly distinguishable, in that Mr. Stapelton had pre-existing injuries, which the CBA required him to divulge before participating in potentially risky activities.  Medic, on the other hand, could not have reported the allegedly faulty brakes — a dangerous condition of which he was

unaware. In *Stapelton*, Alcoa directed its employee to undergo physical testing at an off-site rehabilitation facility; so, the CBA terms concerning "safe work environment" and "place of employment" and "scope of employment" were implicated. No such issues exist in Medic's intentional tort action. Second, since the decision was entered in *Stapelton*, the Sixth Circuit specifically addressed § 301 preemption of an intentional tort claim in *Valinski, supra*. In April of 2006, this Court did not have the benefit of the appellate panel's analysis which came down four months later.

### III. CONCLUSION

For the foregoing reasons, the Court finds § 301 of the LMRA does not preempt Medic's claims; federal question jurisdiction does not exist; and removal was improper. The Motion of Defendant, The L.D. Kichler Co., to Dismiss, or in the alternative, for Summary Judgment is denied. The Motion of Plaintiff, Josip Medic, to Remand is granted; and the above-captioned matter is returned to Cuyahoga County Common Pleas Court.

**IT IS SO ORDERED.**

**DATE: January 17, 2007**

                                      **s/Christopher A. Boyko**
                                      **CHRISTOPHER A. BOYKO**
                                      **United States District Judge**